## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHASITY HAND, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | |
| BIO-LAB, INC. and KIK CUSTOM PRODUCTS, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Chasity Hand, individually and on behalf of all others similarly situated, brings this action against Defendants Bio-Lab, Inc. ("Bio-Lab") and KIK Custom Products, Inc. ("KIK"), by and through her attorneys, and allege as follows based on information and belief and the investigation by her attorneys, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

### INTRODUCTION

1.     On September 29, 2024, at approximately 5:00 a.m., a massive chemical fire erupted on the roof of the Bio-Lab Chemical Facility located in Conyers, Georgia.

2.     The fire released a hazardous plume of toxic gas and other harmful

substances, including bromine vapor, hydrochloric acid, hydrogen cyanide, hydrogen bromide, and phosgene gas throughout the area.

3.     Chlorine gas, particularly in its technical grade form, along with its byproducts such as hypochlorous acid and hypochlorite ions, is extremely toxic and corrosive. The U.S. Environmental Protection Agency ("EPA") categorizes these substances as Toxicity Category I, signifying the highest level of acute toxicity in terms of oral, dermal, eye, and inhalation exposure.

4.     Exposure to chlorine gas can lead to a range of health issues, including bronchitis, asthma, lung swelling, headaches, heart disease, and meningitis. Acute exposure may result in severe respiratory problems and can even be fatal.

5.     The chemical fire upended the lives of nearly 100,000 residents, who were exposed to these toxic substances. The fire led to mandatory evacuations, emergency advisories to "shelter in place" and "stay indoors," and the closure of local businesses and schools.[1]

6.     This lawsuit is filed by Plaintiff individually and on behalf of all others similarly situated who: (i) reside near the vicinity of the September 29, 2024, chemical fire and resulting toxic chemical plume, and (ii) were forced to (a)

---

[1] https://www.cbsnews.com/news/fire-georgia-chemical-plant/ (last visited October 23, 2024).

evacuate their homes, (b) take shelter indoors, or (c) were instructed to stay indoors due to the fire.

7.      The negligence and recklessness of the Defendants in their failure to prevent the chemical fire and subsequent toxic plume has caused and continues to cause harm to the Plaintiff and the Class.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over each Defendant because they each are either headquartered and/or conducted substantial business in this judicial district.

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district, and because a substantial part of the events or

omissions giving rise to the claims occurred in this District.

## PARTIES

### Plaintiff Chasity Hand

11.     Plaintiff Chasity Hand is a citizen and resident of Conyers, Georgia.

12.     Plaintiff Hand and her children live just over one mile from the Bio-Lab Chemical Facility where the chemical fire erupted.

13.     On September 29, 2024, Plaintiff Hand and her children were in their home when the chemical fire erupted. Due to the mandatory evacuations and shelter-in-place restrictions, Plaintiff Hand and her children were forced to stay in their home, where toxic chemical gas and plumes emanated.

14.     Plaintiff Hand and her children experienced side effects of being exposed to these toxic chemicals, including tasting chlorine in their throats, runny nose, burning in chest and eyes, and coughing. Their symptoms persisted for no less than one week.

15.     Additionally, the school that Plaintiff's children attend was shut down. As a result, Plaintiff's children have been forced to forego going to school for nearly one month. Because of the school closure, Plaintiff's children have been forced to stay inside their home where toxic chemicals emanate in their home. Additionally, Plaintiff Hand and her children have been forced to forego many of the benefits their school provided, such as free meals.

16.     Plaintiff Hand further observed vast amounts of debris from the fire in her backyard.

17.     To this day, she and her children experience the effects of the fire and resulting toxic chemical plume, and are afraid of the long-term effects associated therewith.

18.     As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the September 29, 2024 chemical fire and resulting toxic chemical plume, Plaintiff Hand has suffered damages, including, but not limited to, financial distress as a result of the school closure, an increased risk of disease from exposure to and inhalation of toxic chemicals, contamination of her property by egregiously high and plainly dangerous levels of toxic chemicals dispersed by Defendants into the air and water, and the loss of use and enjoyment of her property and resulting inconvenience, disruption and emotional distress.

**Defendants**

19.     Defendant KIK Custom Products, Inc. ("KIK") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

20.     Defendant KIK is one of North America's largest independent manufacturers of consumer products. KIK acquired Bio-Lab in order to expand its

5

pool and spa treatment business.

21.     Defendant Bio-Lab, Inc. ("Bio-Lab") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal office located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5 and its headquarters located at 1725 N. Brown Road Lawrenceville, Georgia 30043. It is licensed to do business in Georgia and conducts business in several counties, including Gwinnett and Rockdale Counties.

22.     Defendant Bio-Lab is engaged in the business of manufacturing, storing, and/or selling swimming pool and spa water care chemicals under product names that include BioGuard, SpaGuard, Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, and Pro Series.

23.     Defendant Bio-Lab is a wholly owned subsidiary of Defendant KIK. At all relevant times, in law and in fact, Bio-Lab and KIK owned, operated, funded, maintained and/or were otherwise responsible for the Bio-Lab Conyers Facility.

24.     Additionally, Defendants Bio-Lab and KIK constituted a joint venture in connection with the Bio-Lab Conyers Facility inasmuch as they agreed to undertake the ownership and operation of the Bio-Lab Conyers Facility jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property or resources in exercising control

or a right of control over the same.

25.    At all relevant times, Defendants Bio-Lab and KIK acted individually as well as by and through one another and their respective officers, directors, executives, employees, contractors, subcontractors, and/or agents.

## FACTUAL ALLEGATIONS

26.    Bio-Lab operates a chemical manufacturing facility in Conyers, Georgia (the "Bio-Lab Conyers Facility" or the "Facility").

27.    The Bio-Lab Conyers Facility manufactures pool and spa chemicals under product names that include BioGuard, SpaGuard, Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, and Pro Series.

28.    Additionally, the Facility receives, blends, and packages Trichloroisocyanuric Acid ("TCCA") into finished consumer products. TCCA is a chlorinating agent that comes in tablet, powder, and granule form and is used for sanitizing swimming pools and hot tubs.[2]

29.    In swimming pools, TCCA breaks down slowly to release hypochlorous acid, which kills bacteria, algae, and other microorganisms.

30.    However, when TCCA comes into contact with small amounts of water, it causes a chemical reaction that generates heat and decomposes the TCCA.

---

[2] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf (last visited October 23, 2024).

This process produces chlorine gas and explosive nitrogen trichloride.

31.   Chlorine gas, including its byproducts such as hypochlorous acid, is extremely toxic and corrosive. The EPA categorizes these substances as Toxicity Category I, signifying the highest level of acute toxicity in terms of oral, dermal, eye, and inhalation exposure.[3]

32.   Even the slightest exposure to chlorine gas can cause a slew of health issues, including bronchitis, asthma, lung swelling, headaches, heart disease, and meningitis. Acute exposure may result in severe respiratory problems and can even be fatal.

33.   On Sunday, September 29, 2024, at approximately 5:00 a.m., a sprinkler malfunction caused water to come into contact with TCCA.[4] As a result, a fire broke out at the Facility, causing a massive chemical reaction and hazardous gas to emanate from the Facility.[5]

34.   By noon, the fire had been contained, by then reignited while workers were attempting to contain the reactive chemicals in the Facility, causing black smoke to emanate from the Facility.

---

[3] https://www.pesticideinfo.org/resources/acute-toxicity#:~:text=EPA%20gives%20a%20warning%20label,of%20LD50%20and%20LC50%20values (last visited October 23, 2024).
[4] https://www.fox5atlanta.com/news/lawmakers-meeting-residents-rockdale-county-biolab-chemical-fire (last visited October 23, 2024).
[5] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf (last visited October 23, 2024).

35.    At approximately 1:00 p.m., local authorities issued an evacuation order and shut down streets near the Facility.

36.    Approximately 17,000 residents were displaced due to the evacuation order.

37.    The second fire was extinguished by 5:00 p.m., but the thick black smoke was still in the air.

38.    By 7:45 p.m., local authorities issued a shelter in place order until midnight.[6]

39.    More than 77,000 residents, including Plaintiff, were affected and could not leave their homes. Additionally, they were told to keep the windows and doors closed and to keep the air conditioning off.[7]

40.    The shelter in place order was extended and continued into September 20, 2024.

41.    The uncontrolled chemical reaction, fire, and damage to the Facility caused highly toxic chemicals, including TCCA, to stream into the air and water throughout the local community.

42.    Plaintiff and Class members have been exposed to harmful and

---

[6] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf (last visited October 23, 2024).
[7] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf (last visited October 23, 2024).

potentially fatal chemicals that can have both short- and long-term health consequences.

43.    Nearby residents also experienced property damage as a result of debris from the fire landing on their property, including in their yards and in their homes.

44.    Additionally, businesses, churches, schools, and government buildings were forced to shut down operations due to the fire and resulting toxic smoke plume.

## CLASS ALLEGATIONS

45.    Plaintiff brings this action, individually, and on behalf of a class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All owners and lessees of real property in Rockdale County and surrounding communities who were subjected to the evacuation and shelter in place orders as a result of the plume of toxic smoke, debris, and particulate matter that emanated from the Bio-Lab Conyers Facility because of the fire and chemical reaction.[8]

46.    Excluded from the Class(es) are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

---

[8] Plaintiff reserves the right to amend or add to the timeframe included in the definition of the Class after conducting discovery.

Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

47.   **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, tens of thousands of individuals live in Rockdale County, and thousands of properties were subject to the evacuation order, thus Plaintiff believes, and on that basis alleges, that the Class consists of tens of thousands of people.

48.   **Commonality:** Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

  a.   Whether Defendants caused the fire at the Conyers Facility;
  b.   Whether Defendants caused the release of toxic chemicals into the surrounding communities;
  c.   Whether Defendants had a duty to exercise reasonable care in handling highly toxic and harmful chemicals;
  d.   Whether Defendants failed to exercise reasonable care when they released highly toxic and harmful chemicals into the surrounding communities;
  e.   Whether Defendants failed to follow safety measures that would have prevented the fire;
  f.   Whether Defendants engaged in ultrahazardous activities;
  g.   Whether Defendants created a nuisance;
  h.   Whether Defendants engaged in a trespass to the properties of Class members;
  i.   Whether Plaintiff and the Class members suffered injury and damages as a result of Defendants' conduct;

     j.    Whether Plaintiff and the Class members are entitled to damages, equitable relief, and other relief deemed appropriate under the law.

49.  **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out Defendants' uniform conduct.

50.  **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

51.  **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues

of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

52.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

## NEGLIGENCE

53.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

54.     The September 29, 2024 chemical fire and resulting toxic chemical plume was caused by the negligence of Defendants.

55.     Upon information and belief, Plaintiff avers that the chemical fire and resulting toxic chemical plume were caused by the joint negligence of Defendants, and is the fault of Defendants as set forth above.

56.     Defendants, as manufacturers, distributors, and/or suppliers of swimming pool and spa water care chemicals have superior knowledge of these chemicals and their dangers.

57.     Defendants knew or should have known that their conduct leading to

the September 29, 2024 chemical fire and toxic chemical plume would cause injury and damage to nearby residents, including Plaintiff's and proposed Class members' and property and community; such harm was foreseeable.

58. Defendants owed a duty to Plaintiff and proposed Class members, as persons who would be foreseeably harmed by their negligent handling of potentially toxic or hazardous chemicals, to exercise due and reasonable care to prevent the fires on September 29, 2024, resulting surrounding residents, including Plaintiff and proposed Class members.

59. Defendants owed and breached a duty of reasonable care commensurate with the risk of using, manufacturing, storing, and processing hazardous and toxic chemicals, including TCCA and other water-reactive chemicals, in the Bio-Lab Conyers Facility.

60. Defendants' duties include, but are not limited to:

    a. Prevent a fire from occurring on September 29, 2024 at the Bio-Lab Conyers Facility;

    b. Build, maintain, repair, or otherwise prepare the facility to prevent severe weather from causing dangerous chemical reactions;

    c. Ensure chemicals were not compromised or released as a result of extreme weather events;

    d. Follow the guidance presented in the Center for Chemical Process Safety Monograph Assessment of and Planning for Natural Hazards;

    e. Maintain sufficient regulatory coverage of chemicals with reactive hazards;

    f. Develop and implement a sufficient Process Hazard Analysis action item management system;

g.   Properly and safely store chemicals at the Bio-Lab Conyers Facility;

h.   Prevent dangerous chemical reactions between water and chemicals at the Bio-Lab Conyers Facility;

i.   Store, handle, maintain, process or otherwise use chemicals at the Bio-Lab Conyers Facility in order to prevent fires;

j.   Maintain adequate fire prevention, protection and/or suppression systems at the Bio-Lab Conyers Facility;

k.   Maintain emergency and fire protection equipment to ensure it was in good working order prior to severe weather;

l.   Avoid causing a fire on September 29, 2024 at the Bio-Lab Conyers Facility;

m.   Promptly extinguish the fire on September 29, 2024 at the Bio-Lab Conyers Facility;

n.   Avoid causing continuous chemical fires on September 29, 2024;

o.   Avoid creating a toxic chemical plume, as a result of the fires, that spread throughout the proposed Class;

p.   Avoid contaminating the air in the proposed Class area;

q.   Maintain their toxic chemicals in such a way that the fire could not destroy the internal chemical storage structure at the Bio-Lab Conyers Facility;

r.   Prevent exposing Plaintiff and the proposed Class to continuous off-gassing of toxic chemicals even after the fire was extinguished;

s.   Avoid creating or exacerbating circumstances at the Bio-Lab Conyers Facility that would necessitate evacuation orders, shelter-in-place orders and/or shelter-in-place advisories;

t.   Conduct their operations in a safe manner;

u.   Create or enforce policies that would prevent fires from occurring at the Bio-Lab Conyers Facility;

v.   Require or follow reasonable safety measures to prevent or mitigate fires at the Bio-Lab Conyers Facility;

w.   Maintain their premises in a safe condition so as to prevent fires;

x.   Properly supervise and train personnel to prevent fires;

y.   Properly inspect fire suppression systems, chemical storage, or condition of the premises to prevent fires;

z.   Conform their conduct to applicable federal, state, and local legal requirements, including without limitation the federal

15

Clean Air Act, the federal Clean Water Act, the federal Resource Conservation and Recovery Act, the federal Comprehensive Environmental Response Compensation and Liability Act, including specifically the Emergency Planning and Community Right-to-Know Act, Georgia Water Quality Control Act, The Georgia Waste Control Act, the Georgia Hazardous Site Response Act, the Georgia Comprehensive Solid Waste Management Act, and the regulations promulgated pursuant to the statutes;

aa.   Warn Plaintiff and proposed Class members of the long-term health risks and consequences of exposure to high levels of chlorine gas and other toxic chemicals;

bb.   Sufficiently address the September 29, 2024 fires in a way that would reduce injury and damage to the proposed Class members; and

cc.   Prevent the fires and resulting toxic chemical plume through further actions or inactions revealed in discovery.

61.   Defendants breached their duty of reasonable care owed to Plaintiff and proposed Class members in at least the following respects:

a.   Failing to prevent a fire from occurring on September 29, 2024 at the Bio-Lab Conyers Facility;

b.   Failing to build, maintain, repair, or otherwise prepare the facility to prevent severe weather from causing dangerous chemical reactions;

c.   Failing to ensure chemicals were not compromised or released as a result of extreme weather events;

d.   Failing to follow the guidance presented in the Center for Chemical Process Safety Monograph Assessment of and Planning for Natural Hazards;

e.   Failing to maintain sufficient regulatory coverage of chemicals with reactive hazards;

f.   Failing to develop and implement a sufficient Process Hazard Analysis action item management system;

g.   Failing to properly and safely store chemicals at the Bio-Lab Conyers Facility;

h.   Failing to prevent dangerous chemical reactions between water

and chemicals at the Bio-Lab Conyers Facility;

i.    Failure to store, handle, maintain, or otherwise use chemicals at the Bio-Lab Conyers Facility in order to prevent fires;

j.    Failing to maintain adequate fire prevention, protection and/or suppression systems at the Bio-Lab Conyers Facility;

k.    Failing to maintain emergency and fire protection equipment to ensure it was in good working order prior to severe weather;

l.    Causing a fire on September 29, 2024 at the Bio-Lab Conyers Facility;

m.    Failing to promptly extinguish the fire on September 29, 2024 at the Bio-Lab Conyers Facility;

n.    Causing continuous chemical fires on September 29, 2024;

o.    Creating a toxic chemical plume, as a result of the fires, that spread throughout the proposed Class;

p.    Contaminating the air in the proposed Class area;

q.    Maintaining their toxic chemicals in such a way that the fire destroyed the internal chemical storage structure at the Bio-Lab Conyers Facility;

r.    Exposing Plaintiff and the proposed Class to continuous off-gassing of toxic chemicals even after the fire was extinguished;

s.    Creating or exacerbating circumstances at the Bio-Lab Conyers Facility that necessitated evacuation orders, shelter-in-place orders and shelter-in-place advisories;

t.    Failing to conduct their operations in a safe manner;

u.    Failing to create or enforce policies that would prevent fires from occurring at the Bio-Lab Conyers Facility;

v.    Failing to require or follow reasonable safety measures to prevent or mitigate fires at the Bio-Lab Conyers Facility;

w.    Failing to maintain their premises in a safe condition so as to prevent fires;

x.    Failing to properly supervise and train personnel to prevent fires;

y.    Failing to properly inspect fire suppression systems, chemical storage, or condition of the premises to prevent fires;

z.    Failing to conform their conduct to applicable federal, state, and local legal requirements, including without limitation the federal Clean Air Act, the federal Clean Water Act, the federal Resource Conservation and Recovery Act, the federal Comprehensive Environmental Response Compensation and Liability Act, including specifically the Emergency Planning

and Community Right-to-Know Act, Georgia Water Quality Control Act, The Georgia Waste Control Act, the Georgia Hazardous Site Response Act, the Georgia Comprehensive Solid Waste Management Act, and the regulations promulgated pursuant to the statutes;

aa.   Failing to warn Plaintiff and proposed Class members of the long-term health risks and consequences of exposure to high levels of chlorine gas and other toxic chemicals;

bb.   Failing to sufficiently address the September 29, 2024 fires in a way that would reduce injury and damage to the proposed Class members; and

cc.   Failing to prevent the fires and resulting toxic chemical plume through further actions or inactions revealed in discovery.

62.   Defendants' breach of duty directly and proximately caused Plaintiff and the proposed Class to suffer injury and damages.

63.   The damages to Plaintiff and Class members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to ensure that toxic chemicals were stored in such a way that a fire in the facility destroyed the means of removing the chemical from the premises; thus leaving the chemicals to off-gas in the rubble of the burnt building, continuing to expose nearby residents to toxic chemicals.

64.   Plaintiff's and the Class members' injuries and damages include, but are not limited to hurt, inconvenience, loss of use and enjoyment of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, emotional distress, costs of repair, restoration, and remediation, lost trees and growth, lost business income, the property's market,

usable, or rental value, the loss or depreciation of property or business value, evacuation and relocation expenses, out of pocket expenses, and other economic damages as recoverable by law.

65.    Plaintiff's and the Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

66.    Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

## COUNT II

## PRIVATE NUISANCE
(O.C.G.A. § 41-1-1, § 41-1-2, § 41-1-4)

67.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

68.    Through their improper actions resulting in the September 29, 2024 chemical fire and toxic chemical plume, Defendants caused hurt, inconvenience, and damage to Plaintiff and proposed Class members.

69.    Defendants invaded Plaintiff's and Class Members' interest in their property, including their interest in the use and enjoyment of their property, causing nuisance.

70.    The nuisance is such that it would affect an ordinary, reasonable person.

71.     Following the chemical fire and resulting toxic chemical plume, Plaintiff and Class members were exposed to a continuous nuisance as the toxic chemical plume invaded their property.

72.     Defendants caused the creation, continuance, and maintenance of the nuisance.

73.     The nuisance was in Defendants' control.

74.     Defendants' knew or should have known that their conduct would cause nuisance to Plaintiff and the proposed Class.

75.     Defendants did not remedy the nuisance in a reasonable time.

76.     As a result of Defendants' conduct and resulting nuisance, Plaintiff and proposed Class members suffered injury and damages.

77.     Plaintiff's and Class members' injuries and damages are a direct and proximate result of Defendants' conduct leading to the September 29, 2024 chemical fires and toxic chemical plume, and the resulting nuisance.

78.     Plaintiff's and Class members' injuries and damages include, but are not limited to, hurt, inconvenience, loss of use and enjoyment of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, costs of repair, restoration, and remediation of property, lost trees and growth, the depreciation or reduction in their property's market, usable, or rental value, the loss or depreciation of property or business value,

evacuation and relocation expenses, out of pocket expenses, and other economic damages as recoverable by law.

79.    Plaintiff's and the Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

80.    Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

## COUNT III

### PUBLIC NUISANCE
(O.C.G.A. § 41-1-1, § 41-1-2, § 41-1-3)

81.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

82.    Through their actions resulting in the September 29, 2024 chemical fires and toxic chemical plume, Defendants caused hurt, inconvenience, and damage to Plaintiff and proposed Class members.

83.    Through their improper actions, and the resulting spread of a toxic chemical plume, Defendants invaded Plaintiff's interest in property, including his interest in the use and enjoyment of his property, causing nuisance.

84.    The nuisance damaged all those within the sphere of Defendants' operation.

85.    The nuisance obstructed or caused inconvenience to the public in the

exercise of rights common to all.

86.     The nuisance is such that it would affect an ordinary, reasonable person.

87.     Following the chemical fire and resulting toxic chemical plume, Plaintiff and Class members were exposed to a continuous nuisance as the toxic chemical plume invaded their property.

88.     Defendants caused the creation, continuance, and maintenance of the nuisance.

89.     The nuisance was in Defendants' control.

90.     Defendants' knew or should have known that their conduct would cause nuisance to Plaintiff and the proposed Class.

91.     Defendants did not prevent or remedy the nuisance in a reasonable time.

92.     As a result of Defendants' conduct and resulting nuisance, Plaintiff suffered injury and special damages.

93.     Plaintiff's and the Class members' injuries and special damages from are a direct and proximate result of Defendants' conduct leading to the September 29, 2024 chemical fires and toxic chemical plume, and the resulting nuisance.

94.     Plaintiff's and the Class members' special damages and injuries include, but are not limited to, their hurt, inconvenience, loss of use and enjoyment

of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, costs of repair, restoration, and remediation of property, lost trees and growth, the depreciation or reduction in their property's market, usable, or rental value, the loss or depreciation of property or business value, evacuation and relocation expenses, out of pocket expenses, and other economic damages as recoverable by law.

95.     Plaintiff's and the Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

96.     Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

## COUNT IV

## TRESPASS TO LAND AND CHATTEL

97.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

98.     Defendants' negligent and/or intentional conduct leading to the September 29, 2024 chemical fires and toxic chemical plume interfered with the rights of Plaintiff and the proposed Class to enjoy, use, and exclude others from their private property, resulting in a trespass.

99.     Defendants intentionally maintained their chemicals and the Bio-Lab

Conyers Facility in such a way that the chemical fire, toxic chemical plume, and trespass would occur.

100.   Defendants knew or should have known that their conduct leading to the September 29, 2024 chemical fires and toxic chemical plume would cause a trespass to nearby residents, including Plaintiff and proposed Class members.

101.   Defendants knew or should have known that their act of trespass was wrong.

102.   Defendants did and continue to wrongfully interfere with, invade, and intrude on the rights of Plaintiff and the proposed Class to the exclusive use and benefit of their property rights.

103.   Plaintiff's and Class members' injuries and damages are a direct and proximate result of Defendants' conduct leading to the September 29, 2024 chemical fires and toxic chemical plume, and the resulting nuisance.

104.   Plaintiff's and the Class Members' injuries and damages include, but are not limited to, their hurt, inconvenience, loss of use and enjoyment of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, costs of repair, restoration, and remediation of property, lost trees and growth, the depreciation or reduction in their property's market, usable, or rental value, the loss or depreciation of property or business value, evacuation and relocation expenses, out of pocket expenses, and other

economic damages as recoverable by law.

105.   Plaintiff's and the Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

106.   Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

## COUNT V

## ULTRAHAZARDOUS/STRICT LIABILITY

107.   Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

108.   Defendants have engaged in ultrahazardous and abnormally dangerous activities in their use, storage, handling, and manufacturing of toxic and hazardous chemicals at the Bio-Lab Conyers Facility.

109.   Defendants had exclusive custody of and complete control over the manufacturing, processing, storage, handling, use, and inspection of these toxic and hazardous chemicals.

110.   Defendants' conduct regarding these toxic and hazardous chemicals constitutes ultrahazardous activity.

111.   Defendants' manufacturing, processing, storing, handling, use, and inspection of these toxic and hazardous chemicals was the direct and proximate

cause of the chemical fire and toxic chemical plume.

112.   The ultrahazardous nature of Defendants' conduct is evident in the history of repeated chemical fires at the Bio-Lab Conyers Facility and in that hazardous, water-reactive chemicals were permitted to come into contact with water as a result of their use at the Bio-Lab Conyers Facility.

113.   Plaintiff and proposed Class members were exposed to the toxic chemical plume as a result of Defendants' ultrahazardous or abnormally dangerous activities causing the chemical fire.

114.   Plaintiff and proposed Class members suffered injuries and damages as a direct and proximate result of Defendants' ultrahazardous activities.

115.   Defendants are thus strictly liable to Plaintiff and proposed Class members for their damages.

116.   Plaintiff's and the Class members' injuries and damages include, but are not limited to, their hurt, inconvenience, loss of use and enjoyment of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, costs of repair, restoration, and remediation of property, lost trees and growth, the depreciation or reduction in their property's market, usable, or rental value, the loss or depreciation of property or, evacuation and relocation expenses, out of pocket expenses, and other economic damages as recoverable by law.

117.   Plaintiff's and the Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

118.   Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

## COUNT VI

## WILLFUL WANTON CONDUCT

119.   Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

120.   Defendants, as manufacturers, distributors, users, and/or suppliers of swimming pool and spa water care chemicals have superior knowledge of these chemicals and their dangers.

121.   Defendants owed a duty to Plaintiff and proposed Class members, as persons who would be foreseeably harmed by their recklessly indifferent handling of pool and spa water care chemicals, to exercise due and reasonable care to prevent the fires on September 29, 2024, resulting toxic chemical plume, and injuries and damages to Plaintiff and proposed Class members.

122.   Plaintiff and proposed Class members had a reasonable expectation that Defendants would not cause, or fail to prevent, chemical fires and subsequent toxic chemical plumes in the area surrounding the Bio-Lab Conyers Facility.

27

123.   Defendants knew or should have known that their conduct leading to the September 29, 2024 chemical fire and toxic chemical plume would cause injury and damage to nearby residents, including Plaintiff's and proposed Class members' property; such harm was foreseeable.

124.   Defendants conduct, including but not limited to their failure to prevent this chemical fire despite a history of repeated chemical fires at the Bio-Lab Conyers Facility and other facilities, breached their duty and demonstrates their willful and wanton conduct.

125.   Defendants breached their duty and acted, or failed to act, knowingly, willfully or wantonly with conscious disregard and indifference to the rights and safety of Plaintiff and proposed Class members with knowledge that their actions and inactions would cause injury and harm to Plaintiff and proposed Class members.

126.   Defendants conduct was so reckless or so charged with indifference to the consequences as to be equivalent in spirit to actual intent.

127.   Plaintiff and proposed Class members have suffered injury and damages as a direct and proximate result of Defendants' acting, or failing to act, knowingly, willfully or wantonly with conscious disregard and indifference to the rights and safety of Plaintiff's and proposed Class members.

128.   Plaintiff's and Class members' injuries and damages include, but are

not limited to, their hurt, inconvenience, loss of use and enjoyment of property, loss of right to enjoy possession of their property, discomfort, disrupted peace of mind, unhappiness, annoyance, costs of repair, restoration, and remediation of property, lost trees and growth, the depreciation or reduction in their property's market, usable, or rental value, the loss or depreciation of property or business value, evacuation and relocation expenses, out of pocket expenses, and other economic damages as recoverable by law.

129.    Defendants' actions show willful misconduct, wantonness, and want of care which would raise the presumption of conscious indifference to consequences.

130.    Punitive damages should be imposed in an amount sufficient to punish, penalize, or deter Defendants from repeating similar conduct.

131.    Plaintiff's and the proposed Class's damages include the need for remediation and continued, periodic testing of their water, soil, crops, and air to ensure they are safe.

132.    Because Defendants have acted in bad faith in the underlying transaction or occurrence and have caused Plaintiff and the proposed Class members unnecessary trouble and expense, they are subject to liability for reasonable attorneys' fees and expenses of litigation as part of damages recoverable by Plaintiff and proposed Class members.

## COUNT VII

## MEDICAL MONITORING

133.   Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

134.   As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and Class members face an increased susceptibility to injuries and thus irreparable threat to their health can only be mitigated by the creation of a fund to provide for a medical monitoring program, including: funding of a study of the long-term effects of exposure to chlorine and other hazardous chemicals, funding a study

of the long-term effects of chlorine and other hazardous chemicals within the human

body, gathering and forwarding to treating physicians information relating to the diagnosis and treatment of injuries which may result from exposure to chlorine and other hazardous chemicals, aiding in the early diagnosis and treatment of resulting injuries, and providing funding for diagnosis and preventable medical treatment.

135.   Plaintiff and Class members have no adequate remedy in law in that monetary damages alone do not compensate for the insidious and continuing nature of the harm to them, and only a monitoring program which notifies the recipients of

an aid in correcting the problems can prevent the greater harms which may not

occur

immediately and which may be preventable if proper research is conducted and the

health risks are diagnosed and treated before they occur or become worse.

136.   Plaintiff and Class members have suffered irreparable harm as alleged

herein and, in the absence of equitable relief, will suffer further irreparable harm

from exposure to chlorine and other hazardous chemicals.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully

requests that this Court:

A.   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.   Appoint Plaintiff as the representative of the Class and her counsel as Class Counsel;

C.   Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.   Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Delta to issue refunds of ticket prices to any member of the class who requests a refund;

F.   Award reasonable attorney's fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

<u>**JURY DEMAND**</u>

Plaintiff, individually and on behalf of the putative Class demands a trial by jury on all issues so triable.

Dated: October 23, 2024

Respectfully submitted,

_/s/ G. Franklin Lemond, Jr._
E. Adam Webb
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
Tel: (770) 444-9325
Facsimile: (770) 217-9950
Adam@WebbLLC.com
Franklin@WebbLLC.com

Joseph G. Sauder
Joseph B. Kenney
Juliette T. Mogenson
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: 888.711.9975
jgs@sstriallawyers.com
jbk@sstriallawyers.com
jtm@sstriallawyers.com

***Attorneys for the Plaintiff and the Putative Class***